**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS**

| | | |
|---|---|---|
| A.B., by his parents and next friends, | ) | |
| NATALIE, and CHRISTOPHER BEER | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| SHAWNEE MISSION SCHOOL | ) | |
| DISTRICT, UNIFIED SCHOOL | ) | |
| DISTRICT NO. 512, Johnson County, | ) | |
| State of Kansas | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT 2: NOTICE OF HEARING OFFICER'S SUPPLEMENTAL
DECISION & AWARD (AUGUST 4, 2021)**

## BEFORE THE SPECIAL EDUCATION HEARING OFFICER

| | | |
|---|---|---|
| In the Matter of the Due Process, | ) | |
| Review Hearing for | ) | |
| | ) | |
| A.B. | ) | Case No. 21DP512-001 |
| | ) | |
| vs. | ) | |
| | ) | |
| SHAWNEE MISSION SCHOOL | ) | |
| DISTRICT USD 512 | ) | |

## NOTICE OF HEARING OFFICERS SUPPLEMENTAL DECISION & AWARD

NOW on this 4th day of August, 2021, this matter comes before the Special Education Due Process Hearing Officer on Petitioner's Motion for Reconsideration and Remedies to A.B. for deprivation of a FAPE and lost educational benefit; Addendum A: Summary of Relief Requested by Petitioners, and Respondent's Shawnee Mission School District USD 512's Memorandum and Opposition to Modifying the Hearing Officer's denial of compensatory education or other remedies.

## I.    BACKGROUND:

A.  The Notice of Hearing Officer's Decision in this matter ("the Decision") was issued via email on July 23, 2021, at 3:58 p.m.  The Decision is comprised of Findings of Fact, Conclusions of Law, and the Decision.

B.  In the Decision, the Hearing Officer made several findings regarding the denial of special education to A.B. by the District, including that the District substantively failed to satisfy the IDEA's procedural requirements such that A.B.'s right to a FAPE was significantly impeded. The Hearing Officer's Decision awarded no compensatory education or other relief to Petitioners.

C.  Later in the evening on July 23, 2021, Petitioners' counsel, Matthew Rogers, emailed the Hearing Officer and the District's counsel. In his email, Mr. Rogers wrote, in pertinent part, the following:

> Mr. Rute,
> It appears the Hearing Officer's Decision reflects a finding of a
> deprivation of a FAPE and educational benefit, among other things, but
> does not specify compensatory education or other relief to A.B.  Should
> the Parties anticipate receipt of an addendum to the decision, setting forth
> the relief awarded by the Hearing Officer?
> Thank you,
> Matt

D. On July 26, 2021, at 10:22 a.m., the Hearing Officer responded to Mr. Rogers' email stating:

> You are correct that the July 23, 2021, decision reflected, by a
> preponderance of the evidence, a finding of deprivation of FAPE and
> educational benefit.  The decision did not provide for compensatory
> education or other relief to A.B.

E.    Several minutes later at 10:30 a.m., the Hearing Officer issued another email to counsel for the parties stating the following:

> The Hearing Officer, based on Mr. Rogers email dated Friday, July 23,
> 2021, will entertain a Motion for Reconsideration regarding remedies.
> The parties shall make their views known by the end of business day on
> Friday, July 30, 2021.

## II.    DECISION & AWARD

The Hearing Officer has carefully reviewed the arguments and authorities presented by Petitioner and Respondent in response to the Petitioner's Motion for Reconsideration of Remedies to A.B. for Deprivation of a FAPE and Lost Educational Benefit.  Petitioner's Motion for Reconsideration is granted.

The July 23, 2021, Decision determined in pertinent part that the District failed to implement A.B.'s IEP's such that he was denied a free and appropriate public education. The Hearing Officer expressly concluded "A.B. did not receive a FAPE in school years 2018-2019, or 2019-2020." COL ¶169; see also *I.d.* at ¶¶119-120.  Further, the Hearing Officer concluded that A.B.'s November 20, 2019, IEP now in effect does not confer a FAPE to A.B., and the District materially failed to implement the same in a manner that deprived A.B. of a FAPE.  *Id.* at ¶¶153, 156, 158, 161-162, 165.  Accordingly, the Hearing Officer found that A.B. had been deprived of a FAPE beginning in the fall of 2018 through the present day.

A Hearing Officer's finding of FAPE deprivation is the trigger that both authorizes and requires a remedy, including compulsory education and other forms of relief.  20 U.S.C. 1415(i)(2)(C)(iii).

A.   <u>Private Placement:</u>

The Petitioners have suggested that the District's significant IDEA and FAPE violations warrant an award of private placement in a specialized autism center, such as the Sherwood Autism Center, at the District's expense.  The Hearing does not believe that placement in such a restrictive setting is warranted.  A.B. will receive a much greater opportunity to receive proper individual socialization and peer support by continued placement at the Shawnee Mission School District.

B.   <u>A.B.'s Continued Placement at Shawnee Mission School District 512</u>:

The Hearing Officer has determined, based upon A.B.'s needs resulting from the Districts' substantial FAPE deprivation, that the District shall assume the costs of an Independent Educational Evaluation (IEE), a Special Education IEP Specialist, and a Board-Certified Behavior Analysist (BCBA).  The Hearing Officer has based this determination, in pertinent part, through review of the expert witness testimony and the opinions of Dr. Wiegand and Dr. Gentry.  (See Tr. Vol. I, 230:9-232:3, 236:25-238:14; Tr. Vol. III, 748:1-758:19, 784:17-786:9; Pet. Ex. 503, at 33-39.  See also testimony of Dr. Katrina Ostmeyer, Tr. Vol. IV, 888:15-900:20 (describing A.B.'s significant deficits, as of January 2021).

Accordingly, the District shall implement the following:

1.   <u>Independent Education Evaluation</u>:

a)   The District shall hire an Independent Education Evaluator (IEE) to assist in meeting A.B.'s current educational needs and to assist in promoting A.B.'s educational progress.  The search for the IEE by the District shall commence within twenty (20) days of this Decision and Award.

b)   The Individual Education Evaluator shall have the following qualifications:

i.   Possess an active, Kansas conferred Special Education Teaching License in good standing.

ii.   Has no less than three (3) years of Special Education evaluation experience.

iii.   Has no less than three (3) years of previous experience working in a school setting with students with Autism Spectrum Disorder.

c)   The District shall act in good faith to permit the parents full participation

in the selection process for the independent special educational evaluator. Following consultation with the Parents, it is the responsibility of the District to make the final selection of the Independent Educational Evaluator.  The District pay all costs associated with the IEE.

d) Within twenty-one (21) days after the final IEE is complete and in conjunction with the Independent Board-Certified BCBA, the IEP Team shall convene to develop a new IEP for A.B.  It is anticipated that the new IEP will likely include at least 60 minutes of additional para-professional support in the afternoon, a reading goal, social pragmatic goal, a new behavior reduction goal, behavior goals that focus on increasing pro-social replacement and reduce problematic behavior, and a clear and descriptive behavior intervention plan as developed by the Independent BCBA and FBA.  The IEP shall include additional services, goals, and other provisions as determined necessary by the IEP Team, in consultation with the evaluators and the Parents.  The Team shall also consider the need for OT services to address A.B.'s fine motor skills.

2. <u>Special Education IEP Specialist</u>.

a) The District shall hire an independent Special Education IEP specialist to help ensure that the IEP for A.B. is developed to meet A.B.'s current educational needs and to help A.B. make educational progress.  The search for the IEP specialist shall commence within twenty (20) days of this Decision and Award.

b) The IEP specialist shall have the following qualifications:

   i. Possesses an active, state conferred special education teaching license in good standing.

   ii. Has no less than three (3) years of special education administrative experience,

   iii. Has no less than three (3) years of experience in conducting IEP meetings, ensuring the District's completion of progress reports and all legally required documentation.

c) The District shall act in good faith to permit the Parents full participation in the selection process for the independent special education IEP specialist.  Following consultation with the Parents, it is the responsibility of the District to make the final selection of the Specialist Education IEP Specialist.

d) This position shall be procured for the 2021-2022 school year and continue through the 2022-2023 school year, including school-based extended school year services during the summer of 2022.  The search for a special education IEP specialist by the District shall commence within twenty (20) days of this Decision and Award.

e) The special education IEP specialist shall continue to serve should the District's Special Education Services be once again limited by COVID-19.

In such a circumstance, the specialist should serve during the remote virtual learning and extend into school-based re-entry as state and local governances require through the 2021-2022 and 2022-2023 school years. A HIPPA compliant video conferencing program is recommended for providing remote services to the school staff and the parents at the expense of the District.

f)   The District is responsible for ensuring that the contractual agreement with the special education IEP specialist satisfactorily reflects the scope of the above responsibilities and obligations.

3.   <u>Board-Certified Behavior Analyst BCBA).</u>

a)   The District shall hire an independent Board-Certified Behavior Analyst (BCBA).  The search for the BCBA by the District shall commence within twenty (20) days of this Decision and Award.  This position shall be procured for the 2021-2022 school year and continue through the 2022-2023, including school-based extended school year services during the summer of 2022. The Board-Certified Behavior Analyst shall continue to serve should the District Special Education Services be once again limited by Covid-19.  In such a circumstance, the BCBA should serve during remote virtual learning and extend into school-based re-entry as directed by state and local requirements through the 2021-2022 and 2022-2023 school years.

b)   The BCBA must have held this credential for a minimum of three consecutive years and have previous experience working in the school setting with students who Autism Spectrum Disorder for a minimum of 3 consecutive years. BCBA must provide a copy of the BCBA certificate and be in good standing with the ethical and professional standards set forth by the Behavior Analyst Certified Board. The search for a Board-Certified Behavior Analyst by the District shall commence within 14 days of the date of this Decision and Award.

c)   The District shall act in good faith to permit the Parents full participation in the selection process for the board-certified Behavior Analyst. Following consultation with the Parents, it is the responsibility of the District to make the final selection of the board-certified Behavior Analyst.

d)   Provide behavior analytic services for A.B. throughout all school settings during virtual and face-to-face instruction,

e)   Conduct a complete virtual/remote direct observation that includes a minimum of 3 hours across multiple sessions of virtual/remote direct observation in the course room(s) where A.B. is receiving his remote instruction. The remote Functional Behavior Assessment conducted by the independent BCBA shall also include A-B-C data collected during the 3 hours of direct observation, a completed Motivation Assessment Scale (Durand & Crimmins, 1992) by C.B., N.B., BCBA and A.B.s' remote teacher and a VB-MAPP completed by the BCBA. A separate Motivation Assessment Scale shall be completed for each identified target behavior

by each person identified above. Please note: The Shawnee Mission School District will be responsible for obtaining the Motivation Assessment Scale through a legitimate vendor. A xeroxed copy of the Motivation Assessment Scales must not be provided to the individuals completing this scale as this is a copyright violation. The District will provide the BCBA with a purchased VBMAPP Guide and Protocol from a legitimate vendor as well. The District will deliver these assessment tools to the BCBA within a sufficient timeframe for the completion of the Functional Behavior Assessment. The Functional Behavior Assessment shall also summarize the results for a preference assessment in order to identify A.B.s' motivational preferences.

f)   Conduct direct observations during virtual and in-person school sessions.

g)   In the event that virtual learning is in progress, the District will obtain an account with a remote video conferencing program for the BCBA that is HIPPA compliant with all necessary platform features required to comply with these services.

h)   In the event that virtual learning is in progress, the District will obtain an account with a remote video conferencing program for the parents that is HIPPA compliant with all necessary platform features required to ensure parental participation in all District meetings and staffing directly related to A.B.s' IEP.

i)   It is recommended that The Functional Behavior Assessment Report developed by the independent BCBA be submitted to the District no later than three (3) weeks after the start date of the contractual agreement between these parties.

j)   The BCBA will present the findings of the Functional Behavior Assessment, either in person or through remote video conferencing as applicable due to COVID-19, to IEP team within two (2) weeks of submitting the FBA to the Special Education Director. All relevant District staff, the parents and the contracted IPE Specialist must be invited and in attendance to this FBA review meeting.

k)   The IEP Team, including relevant staff from District, the parents, the contracted BCBA and IEP Specialist shall reconvene within three (3) weeks after the FBA review meeting to develop the Behavior Intervention Plan.

l)   The BCBA will oversee the implementation of the Behavior Intervention Plan across all school settings, either in-person and/or during remote learning sessions.

m)   The BCBA will develop materials for the District staff training, parent training on the implementation of the Behavior Intervention Staff. The District shall assume the cost of all materials.

n)   In the event that school re-entry is conducted during the 2021-2022 school year, the Functional Behavior Assessment and Behavior Intervention plan shall be revised based on the in-school environment. All

requirements stated above will apply. In the event of school re-entry, it is recommended that the independent BCBA provide a minimum of 8 hours per school week within all school settings in which A.B. participates, to assist staff with BIP implementation and to provide modeling and direct instruction on behavior strategies utilized in the BIP. The District is responsible for ensuring that the contractual agreement with the Board Certified Behavior Analyst satisfactorily reflects the scope of these responsibilities and obligations.

o)   The independent BCBA shall provide twenty-five (25) hours of compensatory in-home ABA services for A.B. during the 2021-2022 school year, at the expense of the District. The scope of these services is to assist the parents with the implementation of evidenced- based behavior analytic strategies to be determined by the independent BCBA.

4.   <u>Educational Tutor</u>:

a)   The District shall hire an educational tutor to provide twenty-five (25) hours of in-home compensatory educational tutoring for each of the 2021-2022 and 2022-2023 school years.

b)   The District shall hire an educational tutor who possesses an active Kansas Special Education teacher license and three (3) years of experience in teaching young children with autism to provide in-home educational tutoring which aligns with A.B.s' IEP.  The Parents can elect to participate in the recruitment of this tutor. Tutoring services shall commence within three (3) weeks of the date of this Decision and Award.

5.   <u>Staff Training</u>:

1.   The District shall provide in-person staff training for general and special education staff on autism and applied behavior analytic school-based best practices from a reputable company that is peer- reviewed by professionals in the fields of educating students with autism and school-based behavior analytic procedures. Examples of such training can be found at https://autismservices.chancelight.com/school-services/staff-training/.

2.   The District shall maintain documentation of the procured in-person training and made available to the Parents upon their request. The Parents will also be offered the opportunity to attend this training.

6.   <u>Additional Requirements</u>:

The District shall provide the following:

a)   Reimburse Petitioners $1,462.12 for Riley ABA; $2,280 for special education advocate expenses; and $1,840 for the private evaluation by Dr. Ostmeyer.

b)   Provide quarterly progress reports that identify the observing staff, and that attach copies of all underlying data collection.

c)   Develop an internal tracking system that allows and requires staff to document concerns related to suspected or known disabilities and further documents the

District's actions related to those suspicions or knowledge, including periodic administrative review of the same.

d)  Pay Petitioners' accrued attorney's fees and costs.

7.  <u>Clerical Error</u>:

It appears Part VII, paragraph G, of the Hearing Officer's decision contains a clerical error referencing "kindergarten." The Hearing Officer found that the District breached its Child Find duties in A.B.'s 2018-2019 school year (kindergarten), depriving A.B. of a FAPE, in part because the evaluation extended beyond the 60-school day period without consent and due to other evaluative errors. *See, e.g.,* July 23, 2021, Decision, Conclusions of Law ¶¶ 113, 119(a)(1)-(4), 120, 137, 138, 169-171. Accordingly, the Hearing Officer hereby removes the reference to "kindergarten," (A.B.'s 2018-2019 school year) in Part VII, ¶ G.

8.  <u>Appeal Information</u>:

Any party may appeal this decision to the State Board of Education, pursuant to K.S.A. 72-3418(b), by filing a written notice of appeal to:

> Notice of Appeal
> ATTN: Special Education and Title Services
> Landon State Office Building
> 900 SW Jackson Street, Suite 620
> Topeka, Kansas 66612-1212

The Notice of Appeal must be filed with Special Education and Title Services, designee of the Commissioner of Education, not later than 30 calendar days after the date of the postmark on the envelope containing this decision. Filing is complete upon receipt of the Notice of Appeal in the office of Special Education and Title Services. Emailed submissions will not be accepted for filing.

Be advised that upon receipt of a Notice of Appeal by either party, Special Education and Title Services will inform both parties of a Designated State Review Officer. Upon notification, the local education agency shall ensure the official record is transmitted in a timely manner by the Hearing Officer to the Designated State Review Officer.

**IT IS SO ORDERED.**

_____August 4, 2021_____          _____
Date                                                Larry Rute, Hearing Officer

## CERTIFICATE OF SERVICE

I, Larry R. Rute, do verify that I have provided a true and correct copy of the above and foregoing Notice of Hearing Officer's Decision upon the following parties:

Mr. Matthew J. Rogers
The Law Offices of Barber Emerson LC
1211 Massachusetts Street
Lawrence, KS   66044
mrogers@barberemerson.com

Mr. Joshua E. Douglass
Mickes O'Toole LLC
12444 Powerscourt Drive, Suite 400
St. Louis, MO   63131
jdouglass@mickesotoole.com

by e-mailing only a copy to all parties, this 4th day of August, 2021.

Larry R. Rute, Hearing Officer